UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-20360-BLOOM/Louis

JEFFREY PETER DATTO, PH.D.,

        Plaintiff,

v.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES, et al.,

        Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant, Florida International University Board of Trustee's ("Defendant"), Motion to Dismiss, ECF No. [20] ("Motion"). Plaintiff filed a response in opposition, ECF No. [30] ("Response"), to which Defendant filed a reply, ECF No. [32] ("Reply"). The Court has reviewed the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

## I.      BACKGROUND

This matter arises from alleged violations of Titles II and V of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("RA") related to Defendant's denial of Plaintiff's admission applications to its medical school program. According to the Complaint, ECF No. [1] ("Complaint"), Plaintiff is a former MD-PhD student that attended medical school at Thomas Jefferson University ("TJU"). ECF No. [1] at ¶ 6. He was dismissed from TJU's medical school three days before graduation. *Id.* TJU is a "sister Association of American Medical Colleges . . . medical school of FIU." *Id.* Plaintiff alleges that at the time of

dismissal from TJU, he was on a "significant amount of medication to treat bipolar disorder, which contributed to a severe learning and thinking disability that resulted in his dismissal," and he had taken psychiatric medications from May 2003 through summer 2006. *Id.* at ¶¶ 7-8. The combination of medications "made him sleep 12+ hours a day, gain a lot of weight, have a significant tremor, and, in conjunction with an underlying mental illness, caused significant impairments in his learning, thinking, and processing speed of information compared to the general population." *Id.* at ¶ 11.

After his dismissal, Plaintiff "engaged in lengthy litigation pro se against TJU" for violations of the ADA and RAs, which ultimately resulted in a settlement. *Id.* at ¶¶ 13-16. Plaintiff then engaged in "considerable steps to again be a qualified applicant to medical school." *Id.* at ¶ 17. The Complaint alleges that Plaintiff "meets/exceeds all the qualifications needed for admission to FIU." *Id.* at ¶ 23. He received a 32 score on the MCAT, and he has a 3.82 GPA from Johns Hopkins University. *Id.* at ¶¶ 18-20. According to Plaintiff, his MCAT score and grade point average exceed the qualifications for students that matriculated into FIU's medical school. *Id.* Plaintiff also represents that he has "significant research experience, clinical experience, community service, and volunteer work of which the quality and quantity meets/exceeds the expectations for those whom FIU matriculates," and he has "10 letters of recommendation from prestigious faculty, staff, students and members of the community, which meets the qualifications for the students that FIU matriculates." *Id.* at ¶¶ 21-22.

In 2015, Plaintiff applied to FIU through the American Medical College Application Service ("AMCAS"). *Id.* at ¶ 26. As part of his application, he disclosed his diagnosis of bipolar disorder and he explained the "institutional action taken against him at TJU." *Id.* at ¶¶ 27-28. He then completed FIU's secondary application and submitted it to FIU. *Id.* at ¶¶ 29-30. However, his

application was denied after a "holistic review." *Id.* at ¶ 31. The Complaint represents that "Plaintiff believes the holistic review also involved a google search of Plaintiff's name, and on the first page of the search they found out about Plaintiff's litigation against TJU under the ADA and the Rehab Act." *Id.* at ¶ 32. Plaintiff alleges that in his lawsuit with TJU, TJU asserted that he would "not be able to be successful as a medical school student and future clinician" in light of the seriousness of the bipolar disorder. *Id.* at ¶ 24. According to the Complaint, "FIU is influenced by the actions of TJU and also likely [to] perceive Plaintiff to have the disability bipolar disorder or some other serious mental illness disability that prevented his completion of medical school at TJU." *Id.* at ¶ 25.

After his medical school application was denied, Plaintiff then applied to the Graduate Certificate in Molecular and Biomedical Sciences program at FIU's medical school. *Id.* at ¶ 33. Plaintiff alleges that this "would have allowed him to show academically he could handle the course work and address any perceived professionalism concerns that FIU may have had with him from their holistic review." *Id.* According to Plaintiff, had he done well in this program, "he would have been guaranteed an interview [for the medical school], and if he had been on the wait-list, he would have been automatically accepted." *Id.* at ¶ 35. However, this application was denied because his professional experience was "too advanced" for the program. *Id.* at ¶ 34.

Plaintiff then "performed additional meaningful volunteering, shadowing, and community service" and reapplied to FIU's medical school, but he was again rejected. *Id.* at ¶¶ 38-39. The Complaint states that he was informed by Defendant's associate general counsel that his applications were denied "after careful holistic review." *Id.* at ¶¶ 42-43. Plaintiff now brings six counts against Defendant grounded on theories of disparate treatment, failure to accommodate a

disability, and retaliation under the ADA (Counts I, III, and V) and the RA (Counts II, IV, and VI).

In Counts I and II, disparate treatment, he alleges that he is a qualified individual whose denial was "due to discrimination on the basis of a disability," and his "dismissal from TJU was held against him, which was due to a disability." *Id.* at ¶¶ 48-49, 89. He adds that it is "likely FIU's perception that he will continue to have problems due to the disability bipolar disorder, as this was the perception of their sister AAMC medical school TJU, and thus is a not a qualified applicant." *Id.* at ¶ 79, 89. Further, he asserts that two other applicants "who were similar to Plaintiff in all other regards except that they did not suffer from a disability" were both accepted into the medical school. *Id.* at ¶¶ 81, 89.

In Counts III and IV, failure to accommodate a disability, he alleges that he asked FIU for two "reasonable accommodations," both of which were denied. *Id.* at ¶¶ 95, 103, 109. First, "the ability to be interviewed to be able to present to them his medical reports establishing that a disability affected his performance at the end of medical school and address any other concerns they have of him and why he currently still wants to attend their medical school." Second, the "accommodation to be able to be accepted into their Graduate Certificate in Molecular and Biomedical Sciences program[.]" *Id.* at ¶¶ 96-97, 109.

In Counts V and VI, retaliation, Plaintiff alleges that Defendant "is forever refusing Plaintiff admission to FIU because he sued TJU," which is the "sister AAMC medical school of FIU." *Id.* at ¶¶ 113-15, 128. He adds that he sent a "clarifying letter disclosing his past litigation against TJU and his application was denied again without any specific explanation why." *Id.* at ¶¶ 12, 128. He concludes that Defendant is "retaliating against Plaintiff in their denial of his applications to their medical school and graduate certificate program and refusal to offer any

reasonable accommodations that will help him overcome this denial decision due to his disability." *Id.* at ¶¶ 122, 128.

Defendant moves to dismiss the Complaint in its entirety. First, it asserts that the Complaint fails to satisfy the requisite pleading standards. ECF No. [20] at 2, 6-8. Second, the RA claims fail because his admissions denial was not solely based on a disability. *Id.* at 3, 8-9. Third, the disparate treatment claims fail because Plaintiff does not allege that he is disabled, otherwise qualified, or that FIU had knowledge of his perceived disability. *Id.* at 3, 9-11. Fourth, the reasonable accommodation claims fail because these claims are vague and the requested accommodations are not reasonable. *Id.* at 4, 11-13. Fifth, the retaliation claims fail because the allegations lack requisite knowledge, "but-for" causation, and temporal proximity to the alleged protected activity— Plaintiff's lawsuit against TJU. *Id.* at 4-5, 13-16. Finally, Defendant argues that any claim for compensatory damages under the RA and ADA is insufficiently pled. *Id.* at 5, 16-17.

In response, Plaintiff contends that his Complaint satisfies the pleading standards. ECF No. [30] at 6-8. He adds that the RA counts must not be dismissed because his admission denial was based solely on his disability. *Id.* at 8. He maintains that the disparate treatment claims can be established as he is disabled, FIU was on notice of his disability, and he is an otherwise qualified individual. *Id.* at 8-13. Plaintiff argues that his failure to accommodate claims are not vague and the requests were reasonable, *id.* at 13-17, and the retaliation counts do not fail as a matter of law because they are not lacking in requisite knowledge, but-for causation, and temporal proximity. *Id.* at 17-19. Finally, he asserts that compensatory and equitable damages are properly pled as claims for relief. *Id.* at 19-20.[1]

---

[1] The Response attaches the following Exhibits: Exhibit A, *id.* at 22-33; Exhibit B, *id.* at 34-72; Exhibit C, *id.* at 73-76; Exhibit D, *id.* at 77-82; Exhibit E, *id.* at 83-89; Exhibit F, *id.* at 90-91; and Exhibit G, *id.* at 92-100.

In reply, Defendant argues that the Complaint and Response "fail entirely to allege sufficient facts to establish that this case in any way involves discrimination, a failure to accommodate, or retaliation. Instead, the allegations have demonstrated that this case arises solely from Plaintiff being denied admission to medical school for not meeting FIU's standards and qualifications." ECF No. [32] at 1. Defendant maintains that Plaintiff cannot amend the Complaint through the Response, *id.* at 4, the purported accommodations requested are unreasonable and would require FIU to greatly alter its admissions process and lower its standards for admissions, *id.* at 4-6, Plaintiff cannot show that he was otherwise qualified for admission, *id.* at 7-8, he cannot establish that FIU was aware of his past litigation or based its denial decision solely on this information, *id.* at 8-9, and amendment is futile. *Id.* at 9-10.

The Motion, accordingly, is ripe for consideration.

## II.     LEGAL STANDARDS

### A.     Motion to dismiss

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 (alteration in original)). "Factual allegations must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### B.    *Pro se* **litigants**

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This leniency, however, does not confer on *pro se* litigants "a right to receive special advantages not bestowed on other litigants. [The *pro se* litigant] must, for example, abide by local rules governing the proper form of pleadings." *Procup v. Strickland*, 760 F.2d 1107, 1115 (11th Cir. 1985). Further, courts cannot serve as *de facto* counsel for a party and cannot rewrite a deficient pleading for the sake of sustaining an action. *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1264 (S.D. Fla. 2004). The Court cannot simply "fill in the blanks" to infer a claim, *Brinson v. Colon*, 2012 WL 1028878, at *1 (S.D. Ga. Mar. 26, 2012), as "it is not the Court's duty to search through a plaintiff's filings to find or construct a pleading that satisfies Rule 8," *Sanders v. United States*, 2009 WL 1241636, at *3 (N.D. Ga. Jan. 22, 2009); *see Bivens v. Roberts*, 2009 WL 411527, at *3 (S.D. Ga. Feb. 18, 2009) ("[J]udges must not raise issues and arguments on plaintiffs' behalf, but may only construe pleadings liberally given the linguistic imprecision that untrained legal minds sometimes employ." (citing *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008))). In determining whether a *pro se* litigant has stated a claim, "the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations," while keeping in mind that "wildly implausible allegations in the complaint should not be taken to be true." *Miller*, 541 F.3d at 1100.

It is through these lenses that the Court considers the Motion and the parties' arguments.

### III.    DISCUSSION

Disposition of the Motion raises two overarching issues. The first is whether the Complaint alleges claims upon which relief can be granted. The second is, if not, whether amendment is futile.

### A.    Pleading sufficiency

According to Defendant, the "entire lawsuit is beyond speculative and vague" and the causes of action "are not supported by sufficient or specific allegations to make the claims plausible under *Twombly* and *Iqbal*." ECF No. [20] at 1-2. In its view, Plaintiff has not pled facts that FIU's actions constituted discrimination or retaliation, this case does not involve a "shifting reason" for denial of admission and there is no assertion that FIU even referred to TJU in its denial, and the Complaint is devoid of allegations regarding FIU's admission process and selection criteria. *Id.* at 2. Defendant adds that the Complaint alleges a series of events giving rise to the lawsuit, but they are "unspecified chronologically" and include allegations spanning 2003 to 2015. *Id.* at 7. In response, Plaintiff contends that he has pled circumstantial evidence of discrimination because his applications meet or exceeds the admissions qualifications, yet the applications were denied without an interview and without a specific reason. ECF No. [30] at 1-3.[2] He denies that the Complaint is vague, speculative, or deficient as a matter of law. *Id.* at 2. He adds that Defendant was aware of his litigation history with TJU, and Defendant's citations do not support the notion that his allegedly discriminatory denial of admission to medical school is a subject that the Court should not review. *Id.* at 7-8.

---

[2] In the Response, Plaintiff appears to raise a new allegation that he "didn't mention in the complaint, but can prove consistent with the allegations, is that even though he is a dismissed medical student, FIU is still allowing him to apply even in 2020 to their medical school." ECF No. [30] at 2 (citing Exhibit A). The Court will not consider these newly asserted allegations/arguments in ruling on the instant Motion. A "Plaintiff may not amend a complaint via a response to a motion to dismiss." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012); *see also Bruhl v. Price Waterhousecoopers Int'l*, No. 03–23044, 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007) (noting that a plaintiff may not supplant allegations made in their complaint with new allegations raised in a response to a motion to dismiss); *Seropian v. Wachovia Bank, N.A.*, Case No. 10-80397-CIV, 2010 WL 2949658, at *4 (S.D. Fla. July 26, 2010) (court refused to consider new claim pled in response to motion to dismiss where the claim was not pled in the original complaint) (citing *Peterson v. Atl. Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993) ("a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for her.")).

Upon review, although the *pro se* Complaint does not contain the precision of a lawyer-crafted pleading, the Court concludes that there exists a plausible claim for relief based on the underlying factual allegations. The gist of the Complaint is that Plaintiff, who has a mental illness that can be treated, is a fully qualified applicant to FIU's medical school and meets or exceeds its admissions requirements but, nonetheless, Defendant will not admit him into any of its medical school programs because he previously sued FIU's sister medical college, TJU, and because he has bipolar disorder. In short, the Complaint asserts that he has been treated unfairly and in a discriminatory manner because "[h]is dismissal from TJU was held against him, which was due to a disability," and Defendant has only explained its position by cryptically stating that his applications were denied after a "holistic review." ECF No. [1] at ¶¶ 31, 43, 49. Indeed, the Complaint alleges that Defendant admitted two of Plaintiff's lab peers who were similar to Plaintiff applicants except that they did not have a disability. *Id.* at ¶ 81.

Although alternative legitimate grounds for his denials to medical school may certainly be the driving force behind Defendant's actions, the Complaint does not foreclose the possibility that Defendant's rejections were because of discriminatory reasons tied to his medical history and his past rather than because of academic considerations. Further, the Court is unconvinced by Defendant's contention that, for pleading purposes, when reviewing the substance of academic decisions, courts must defer to universities and faculty judgments. *See* ECF No. [20] at 2-3. First, as Plaintiff rightfully points out, while disputes over pure academic matters, such as grading, involve issues that Courts should not wade into, "whether there was a discriminatory animus to the exclusion of an individual from a medical school, whose existence greatly depends on government funding, is an issue the Court does often get involved in." ECF No. [30] at 3.

Second, issues surrounding medical school admission do not necessarily constitute "academic" decisions that compel deference to the admissions decision, especially where, as here, allegations of discrimination are squarely asserted. In this respect, Defendant cites cases that involve students being dismissed from school solely based on their academic performance rather than because of potentially discriminatory reasons, and they do not involve motions to dismiss. *See, e.g.*, *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985); *Bd. of Curators of Univ. of Missouri. V. Horowitz*, 435 U.S. 78, 90-92 (1978). Moreover, the cases Defendant cites that merely reference judicial deference but which involve alleged discrimination under the ADA and RA do not hold that when reviewing the sufficiency of a pleading at this stage, a court must take the university or faculty's judgments as unquestionable.[3] Accordingly, the Court will not dismiss the Complaint on grounds that the pleading contains only conclusory allegations and,

---

[3] In *J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921 (11th Cir. 2016), the Eleventh Circuit affirmed the dismissal of claims under the ADA and RA brought by a medical school student that was kicked out of school after breaching the school's substance abuse and alcohol agreement numerous times, which alcohol abuses required his absence from school and hospitalization. *Id.* at 923. The court explained that none of the school's actions fell within the statutory definition of discrimination under Title III of the ADA or the RA, and although the student alleged that his major depressive disorder constituted a mental disability, he "did not allege that he was dismissed because of his mental disability. Rather, he alleged that he was dismissed because he breached his agreement to abstain from alcohol consumption. At best, Nova discriminated on the basis of J.A.M.'s alcohol-related behavioral misconduct, not his disability." *Id.* at 925-26.

Similarly, in *Wood v. President & Trustees of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214 (11th Cir. 1992), which involved an appeal of a jury verdict, the Eleventh Circuit stated that there was "no question" the student failed to meet the academic qualifications to perform at the college. *Id.* at 1222-23. In fact, the court noted that evidence at trial showed that the plaintiff "did not meet its admissions standards either as a transfer student or as an incoming freshman. Spring Hill's admissions standards for a transfer student require 20 hours of completed college credit with at least a 2.0 average, which Wood did not claim to have. Nor did Wood meet the requirements for an incoming freshman, because her GED scores were below Spring Hill's admissions requirement, and because she had not taken either the ACT or SAT standardized college admission tests." *Id.* at 1217 n.2. Additionally, plaintiff's "college history revealed a pattern of difficulty in successfully completing college courses. Of 22 college level courses that Wood had previously enrolled in, Wood successfully completed only six. Wood flunked or received unsatisfactory marks in four other classes, and withdrew from the remaining 12 classes before she completed them. In addition, Spring Hill introduced evidence that Wood performed poorly on an English placement test and had deficient math skills." *Id.* at n.3.

consequently, that the Court should instead defer to Defendant's professed judgment as to Plaintiff's unsuitability for admission to its medical programs. Rather, the Court will examine the merits of the remaining dismissal arguments to determine whether Plaintiff pleads sufficient claims, and if not, whether dismissal should be with prejudice.

### B.     Rehabilitation Act claims

According to Defendant, Counts II, IV, and VI, which assert claims under the RA, must be dismissed because the Complaint does not satisfy the causation prong of "solely by reason of . . . his disability." ECF No. [20] at 8-9. "Disability discrimination claims under the ADA and Section 504 are subject to a similar legal analysis, because both statutes are generally construed to impose the same legal requirements." *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010) (internal citation omitted). *See also J.A.M.*, 646 F. App'x at 926 ("Discrimination claims under the RA are governed by the same standards used in ADA cases. In order to establish a prima facie case of discrimination under the RA or ADA, the plaintiff must demonstrate that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability.") (internal citation omitted). The only difference is "with respect to causation[.]" *Alboniga v. Sch. Bd. of Broward Cty. Fla.*, 87 F. Supp. 3d 1319, 1332 (S.D. Fla. 2015).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability . . . be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, section 504(a) of the RA mandates that "[n]o otherwise qualified individual with a disability in the United States . . . shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). According to Defendant, the RA claims are subject to dismissal because the Complaint does not allege that his denial from

admission was due solely to his disability. ECF No. [20] at 8. Rather, Defendant asserts that the Complaint provides two bases for his denial: (1) in retaliation for Plaintiff previously filing a lawsuit against TJU; or (2) due to a perceived disability. *Id.* Plaintiff responds that if "it were not for Plaintiff's disability, he never would have sued TJU who held Plaintiff's same disability against him as well. It is not a retaliatory event of a completely unrelated subject matter, and thus Defendant is discriminating against him solely due to his disability." ECF No. [30] at 8.

The Court is unpersuaded by Plaintiff's position. The Complaint expressly alleges that "FIU is likely influenced by the actions of TJU and also likely [to] perceive Plaintiff to have the disability bipolar disorder or some other serious mental illness disability that prevented his completion of medical school at TJU." ECF No. [1] at ¶ 25. The Complaint also alleges that he believes Defendant's "holistic review also involved a google search of Plaintiff's name, and on the first page of the search they found out about Plaintiff's litigation against TJU under the ADA and Rehab Act." *Id.* at ¶ 32. Likewise, the Complaint alleges that Defendant "is forever refusing Plaintiff admission to FIU because he sued TJU." *Id.* at ¶ 115. Although the Complaint includes allegations that he is being discriminated against due to his disability, it also includes allegations that his lawsuit against TJU is a cause of his admissions issues. Accordingly, Counts II, IV, and VI are insufficient because the Complaint fails to allege that his disability was the sole reason for the denial of his applications. *See J.A.M.*, 646 F. App'x at 927 (dismissing RA claim where plaintiff "alleged no other facts suggesting that Nova dismissed him because of his mental disability, let alone that his mental disability was the *sole* reason for dismissal") (emphasis in original); *Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees*, 749 F. App'x 776 (11th Cir. 2018) (affirming that RA claim was insufficient where "[n]o reasonable jury could conclude that [plaintiff] was discriminated against solely by reason of her disability").

### C.      Disparate treatment claims under the ADA and RA

Defendant argues that Counts I and II, which assert claims for disparate treatment under the ADA and RA, are not adequately stated. "Disparate treatment involves discriminatory intent and occurs when a disabled person is singled out for disadvantage because of her disability." *Forbes*, 768 F. Supp. 2d at 1227. To "present a valid cause of action, [a plaintiff] must show that she: (1) is disabled; (2) is a 'qualified individual'; and (3) was subjected to unlawful discrimination because of the disability." *Id.* at 1228; *see also Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133-34 (11th Cir. 2019) ("In other words, whatever we have said—or say now—about Title II goes for § 504, and vice versa. To state a claim under either Title II or § 504, a plaintiff must establish '(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.'") (citation omitted).

Defendant asserts that Plaintiff's disparate treatment claims fail because the Complaint does not allege adequately that Plaintiff is disabled, that he is otherwise qualified to meet the admissions criteria, or that FIU had knowledge of his purported disability. ECF No. [20] at 3-4, 9-11. According to Defendant, the "salient questions are whether Plaintiff suffers from a disability at the time of his application . . . and whether FIU was on notice of said disability or perceived disability." *Id.* at 9. Defendant argues that while Plaintiff alleges that he has bipolar disorder, this condition "is not a *per se* disability within the meaning of the ADA." *Id.* at 9-10. Further, it contends that the Complaint does not contain "proof" that FIU had actual or constructive knowledge of his disability. *Id.* at 10. Defendant adds that the Complaint does not plausibly show

that Plaintiff is an "otherwise qualified" candidate for admission given his allegations that he still has recurring problems that are triggered by highly stressful conditions. *Id.*

Upon review, the Court finds that the Complaint's allegations are sufficient to set forth actionable disparate treatment claims. First, the Complaint alleges that Plaintiff has been diagnosed with bipolar disorder accompanied by a severe learning and thinking disability while on medication to treat bipolar disorder. *See, e.g.*, ECF No. [1] at ¶¶ 28, 93-94. *See also id.* at ¶¶ 65-72 (describing his limitations caused by bipolar disorder). A "disability" for purposes of the ADA includes "a physical or mental impairment that substantially limits one or more major life activities of such individual;" "a record of such an impairment;" "or being regarded as having such an impairment." 42 U.S.C. § 12102(1). Likewise, a "disability" under the RA is a "physical or mental impairment that constitutes or results in a substantial impediment to employment." 29 U.S.C. § 705(9); *see also id.* at § 705(20). The Complaint's allegations suffice for purposes of pleading that Plaintiff suffered from a "disability" under these statutes. *See Datto v. Harrison*, 664 F. Supp. 2d 472, 496 (E.D. Pa. 2009) (determining that Plaintiff's allegations that he was perceived as suffering from bipolar disorder, that he had cognitive problems and difficulty reading caused by side effects of medication for that disorder, and that he had a learning disability were sufficient to allege that he suffered from a disability); *see also Mace v. Comm'r, Soc. Sec. Admin.*, 605 F. App'x 837, 843 (11th Cir. 2015) (noting that bipolar disorder is characterized by an "episodic nature" of "better days and worse days," along with symptom-free intervals, and it thus can cause employment difficulties).

Second, the Complaint sufficiently alleges that Defendant had notice of Plaintiff's mental disability. For instance, Plaintiff alleges that "he had to disclose the diagnosis of bipolar disorder in his personal statement" in his initial application to FIU. ECF No. [1] at ¶ 28. In fact, the

Response attaches a copy of his personal statement for this application, which included commentary by Plaintiff about his medical treatments and diagnosis of bipolar disorder. *Id.* at 73-76. Third, Defendant's challenge that Plaintiff is not an "otherwise qualified" individual for admission purposes is unavailing at this stage. "In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity." *Zainulabeddin*, 749 F. App'x at 781; *see also Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979) ("An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap.").

Defendant asserts that the Complaint as a whole does not demonstrate that Plaintiff was "otherwise qualified" for FIU's medical school because Plaintiff alleges that he still has recurring episodes, which cause impairments in his ability to think, concentrate, and learn. ECF No. [20] at 11 (citing ECF No. [1] at ¶¶ 66-68, 77). Additionally, Defendant asserts that "Plaintiff improperly assumes that he was otherwise qualified based solely on some prior academic achievements, yet these are only some of the factors considered in a 'holistic review' process," which also includes "subjective factors." ECF No. [32] at 7. However, at this stage, Defendant presents no authority that directs that Plaintiff is unqualified as a matter of law from admission to FIU's programs.[4] The

---

[4] The Court recognizes that in *J.A.M.*, the Eleventh Circuit affirmed dismissal of the amended complaint and held as a matter of law that the dismissed medical school student was not "otherwise qualified" under the RA. 646 F. App'x at 927 ("Second, the allegations in the complaint affirmatively demonstrate that J.A.M. is not an 'otherwise qualified individual' under the RA. *See id.* His mental disability renders him wholly unable to participate in Nova's osteopathic medicine program. From 2011 to 2014, he was unable to complete a single full semester of medical school without suffering a relapse of his major depressive disorder during the semester. These depressive episodes caused him to abuse alcohol, fail classes, and withdraw from his studies. His disability caused at least five hospitalizations for psychiatric stabilization in the course of two years. Even after multiple leaves of absence, one lasting as long as seven months, and intensive outpatient treatment, he repeatedly relapsed and failed to meet Nova's academic requirements. It is clear that J.A.M.'s disability renders him incapable of meeting the academic and technical standards required to participate in Nova's osteopathic medicine program. As such, he is not an 'otherwise qualified individual' and cannot state a claim under the RA."). However, the unique facts in that case are not

Complaint alleges that Plaintiff met or exceeded the admissions qualifications based not only on his MCAT score and GPA, but considering his "significant research experience, clinical experience, community service, and volunteer work" and his "10 letters of recommendation from prestigious faculty, staff, students and members of the community[.]" ECF No. [1] at ¶¶ 18-22. The Complaint further alleges that Plaintiff was denied admission to Defendant's graduate certificate program because he was "too advanced" for it. *Id.* at ¶ 34. The Complaint also alleges that even though Plaintiff still has recurring episodes, he remains able to perform the essential functions of a medical student; he has "been able to better manage his disability" based on a "significant amount of past treatment and life experience," religion, vitamins, supplements, and fish oil, and de-stressing activities like nightly baths, exercise, and using a sauna. *Id.* at ¶¶ 54, 73-77. Further, Plaintiff alleges that while he was in medical school, he passed his medical licensing exams on his first attempt, received honors and good grades in his clinical years, matched in residency programs at two separate hospitals, and received a grant. *Id.* at ¶¶57-64.

Taken as a whole, the Court is unwilling to conclude that Plaintiff's allegations are legally insufficient to establish that he was an "otherwise qualified" applicant. Although Defendant notes that a university is entitled to consider "subjective factors" in their evaluation, such as unsuccessful completion of another medical school, the length of time not being in a classroom setting, and the quality of reference letters and personal statements, weighing these factors to determine if one is ultimately qualified involves factual considerations that are inappropriate for resolution at this stage. The Motion, accordingly, is denied on this ground.

---

reflective of the allegations in the instant Complaint. Further, that case did not involve a student seeking admission to medical school but rather a student challenging his dismissal after multiple troubling incidents that occurred while enrolled. Thus, while that court was presented with a complaint that did not facially show that the plaintiff was otherwise qualified for continued participation in the medical school, by contrast the Complaint here alleges facts that adequately show Plaintiff was otherwise qualified for admission to FIU's medical school programs.

### D.      Reasonable accommodation claims under the ADA and RA

Defendant argues that Counts III and IV, which assert claims for failure to accommodate a disability, do not state a cognizable claim because the Complaint does not allege when Plaintiff requested the accommodations, and in any event, the requested accommodations are unreasonable. ECF No. [20] at 11-13. In particular, the Complaint alleges that Plaintiff requested Defendant provide him two accommodations: (1) "the ability to be interviewed to be able to present to [FIU] his medical reports establishing that a disability affected his performance at the end of medical school and address any other concerns they have of him and why he currently still wants to attend their medical school;" and (2) granting admission into FIU's separate graduate certificate program, the successful completion of which would have provided him "an automatic interview at their medical school, and he would also have received a letter of recommendation" from the course directors. ECF No. [1] at ¶¶ 95-100.

"[F]ailure to accommodate is an *independent* basis for liability under the ADA. . . . If establishing discrimination by failure to make reasonable accommodation, a plaintiff must merely show that (1) he was disabled, (2) he was otherwise qualified, and (3) a reasonable accommodation was not provided." *Alboniga*, 87 F. Supp. 3d at 1337-38 (citations omitted; emphasis in original). Defendant first argues that a duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation is made. ECF No. [20] at 12 (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363-64 (11th Cir. 1999)). In its view, Counts III and IV are deficient because the Complaint does not include dates when Plaintiff made his alleged requests for accommodations. *Id.* at 12-13. The Court does not agree. Even if the Complaint does not include such dates, that would not result in the claims' dismissal. As this Court has previously noted in denying a motion to dismiss under the ADA and RA, "[w]hile the Eleventh Circuit has

held that under the RA, 'the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made,' the Eleventh Circuit has not made this demand an additional pleading requirement to state a claim under the ADA or RA." *Iaciofano v. Sch. Bd. of Broward Cty., Fla.*, No. 16-CV-60963, 2016 WL 4216326, at *3 (S.D. Fla. Aug. 10, 2016). Defendant's argument on this point is, thus, rejected.

Defendant's additional argument that the requested accommodations are unreasonable, however, has more traction. "In certain circumstances, an educational institution's refusal to accommodate the needs of a disabled person amounts to discrimination against that person because of her disability. However, the Rehabilitation Act does not require an educational institution to lower or effect substantial modifications of standards to accommodate a student's disability. Where the purpose of an educational program is to train persons to serve their profession in customary ways, an institution's refusal to make 'major adjustments' to its program does not amount to disability-based discrimination." *Zainulabeddin*, 749 F. App'x at 782 (internal citations omitted).

Here, Plaintiff fails to show that the accommodations he requested are reasonable. Bypassing the ordinary interview selection process or alternatively being admitted into another program are "major adjustments" to the admissions program. *Cf. J.A.M.*, 646 F. App'x at 925 (noting that requested accommodations of "repeated medical leaves of absence for extended amounts of time, exam rescheduling, and excusal of misconduct" would "fundamentally alter [plaintiff's] course of study and the skills learned therein. Nova was under no obligation to provide accommodations that would fundamentally alter the nature of its osteopathic medicine program"). Indeed, Plaintiff alleges that securing an interview, at least at UCF's medical school, is something that less than ten percent of applicants are granted. ECF No. [1] at ¶ 37. In this respect, Plaintiff

does not provide any binding authority that supports his requested accommodations as reasonable.[5] This is especially so because the request for an interview or for alternative entrance into a different program were made *after* his initial application was denied—in effect, requesting Defendant reverse its admissions decision and reconsider his application. However, requiring a medical school to admit a student into a separate program or to reverse an admissions decision are not reasonable accommodations. Defendant's Motion, as to these claims, is therefore granted.

### E.    Retaliation claims under the ADA and RA

Defendant maintains that Counts V and VI, which assert retaliation claims under the ADA and RA, are inadequately alleged. ECF No. [20] at 4-5, 13-16. The ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that (1) he participated in a statutorily protected activity or expression; (2) he suffered an adverse action; and (3) the adverse action was related to the protected activity." *Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 891 (11th Cir. 2007). Further, the "anti-discrimination provision of the Rehabilitation Act incorporates the anti-retaliation provision of the ADA," and a claim for "retaliation under the Rehabilitation Act is the same as that under the ADA." *Id.*; *see also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (noting that ADA retaliation claims use the same framework as retaliation claims arising under Title VII).

---

[5] Notably, in *Manickavasagar v. Virginia Commonwealth Univ. Sch. of Med.*, 667 F. Supp. 2d 635 (E.D. Va. 2009), another court described VCU's decision to offer a prospective medical school applicant an interview as a "generous alteration of the normal application process" and a "significant accommodation," especially given that an interview is granted to only a small fraction of students. *Id.* at 647.

According to Defendant, the Complaint fails to adequately establish "but-for" causation and temporal proximity regarding his application denials (the adverse action) and filing his lawsuit against TJU (the protected activity). ECF No. [20] at 4-5. In its view, the Complaint fails to "allege that the reason he was denied admission was *because* of the lawsuit." *Id.* (emphasis in original). Upon review, the Court does not find Defendant's argument to be well-supported. In the Complaint, Plaintiff expressly alleges that he was "forced to disclose the events that happened at TJU that resulted in his dismissal in his AMCAS application," these events were "very controversial and drew attention to his application, and thus, FIU, as part of holistic review, most likely performed a google search of Plaintiff's name and . . . found out about Plaintiff's lawsuit against TJU," TJU is a sister medical school of FIU, FIU denied his application after it was reviewed, he sent Defendant a "clarifying letter disclosing his past litigation against TJU and his application was denied again without any specific explanation why," and Defendant "is forever refusing Plaintiff admission to FIU because he sued TJU." ECF No. [1] at ¶¶ 31, 113-17, 120, 128. Construing these allegations liberally in favor of *pro se* Plaintiff, the Court finds that the claims are adequately stated. Contrary to Defendant's assertions, the allegations are sufficient to establish that there is a causal link with sufficient temporal proximity between Plaintiff's disclosure of the TJU lawsuit and the alleged retaliation. Accordingly, the Motion is denied on this point.

### F.    Compensatory damages

In the Complaint, in addition to injunctive relief, Plaintiff seeks damages as a result of a "significant delay in Plaintiff's career as a physician scientist, loss of wages, loss of reputation, emotional distress, and financial losses due to application associated costs." ECF No. [1] at ¶¶ 83, 90, 104, 110, 123, 129. His request for compensatory damages also includes back pay and front

pay. *Id.* at ¶ 130. Defendant argues that Plaintiff's compensatory damages are not properly pled as a claim for relief. ECF No. [20] at 5, 16-17.

To recover money damages under the ADA or RA, a plaintiff must demonstrate "intentional discrimination or bad faith." *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005) (citing *Wood*, 978 F.2d at 1219). This requires a showing of "deliberate indifference," which is an "exacting standard." *Silberman*, 927 F.3d at 1134. Deliberate indifference is shown where "the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." *Id.* (citation omitted). Here, the Complaint does not explicitly allege these buzzwords, but the Complaint proceeds on the theory that FIU's alleged discriminatory actions are not unintentional or grounded in legitimacy. Indeed, the Complaint is rooted in purported discrimination against Plaintiff because of his bipolar disorder and because of his litigation history against TJU. According to the Complaint, Defendant does not offer concrete reasons for his application denials despite his requests, and as he alleges, Defendant "does not want to take someone into their class knowing that he has bipolar disorder and that they would need to accommodate him throughout his stay there." ECF No. [1] at ¶¶ 39, 42-43, 80. Further, he asserts that his TJU dismissal has been "held against him" and Defendant is "forever refusing" him admission "because he sued TJU," FIU will not "engage in any interactive process" with him to discuss reasonable accommodations to enable him to enroll, and Defendant is "retaliating" against him by denying his applications to its programs. *Id.* at ¶ 49, 103, 115, 122. Construing these allegations in Plaintiff's favor, at this stage his claims for compensatory damages have been adequately stated. Defendant's Motion is, thus, denied on this point.

22

Case No. 1:20-cv-20360-BLOOM/Louis

### G.  Amendments

Defendant asserts that the Complaint should be dismissed with prejudice because amendment is futile as none of the allegations "give rise to any inference of discrimination or retaliation." ECF No. [32] at 9. As noted, the Court does not agree. While the facts of this case may ultimately turn in Plaintiff's or Defendant's favor, Defendant has failed to demonstrate that any of Plaintiff's asserted claims require dismissal with prejudice.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion, **ECF No. [20]**, is **GRANTED IN PART AND DENIED IN PART**;

2. Counts II, III, IV, and VI are dismissed *without prejudice*.

3. Defendant shall answer the remaining counts of the Complaint no later than **July 27, 2020**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 13, 2020.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Jeffrey Peter Datto, Ph.D.
3352 W. 98th Place
Hialeah, FL 33018
215-915-4416
Email: jpdatto@gmail.com